```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------x
PALMER/KANE LLC,                     :
                                     :
                                     :   15-cv-7406 (JSR)
     Plaintiff,                      :
                                     :   MEMORANDUM ORDER
       -v-                           :
                                     :
ROSEN BOOK WORKS LLC d/b/a ROSEN     :
PUBLISHING GROUP, INC.               :
                                     :
                                     :
     Defendant.                      :
                                     :
-------------------------------------x
```



JED S. RAKOFF, U.S.D.J.

In this action, plaintiff Palmer/Kane LLC ("Palmer/Kane") sues defendant Rosen Book Works LLC d/b/a Rosen Publishing Group, Inc. ("Rosen") for copyright infringement in 19 images registered with the U.S. Copyright Office (the "Copyright Office"). Eight of those images are alleged to be registered under Certificate of Registration No. VAu 529-623, with an effective date of June 25, 2001 (the "June 2001 Registration"). See First Am. Compl. ¶ 16, ECF No. 19. Defendant now moves the Court to issue a request to the Copyright Office, pursuant to § 411(b)(2) of the Copyright Act, to advise whether that Office would have refused registration if it knew that certain information included in the underlying registration application was inaccurate. For the reasons explained below, the Court grants the motion.

1

The statutory provision giving rise to defendant's motion is a peculiar one. Enacted in 2008 as part of the PRO-IP Act, it provides, in relevant part as follows:

> In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(2) (emphasis added).

Paragraph (1), which § 411(b)(2) incorporates for purposes of identifying the kind of inaccurate information that triggers this procedure, concerns inaccurate information that "was included on the application for copyright registration with knowledge that it was inaccurate," id. § 411(b)(1)(A), and, which, if known to the Copyright Office, "would have caused the Register of Copyrights to refuse registration," id. § 411(b)(1)(B).

Although there is no case law in the Second Circuit interpreting or applying § 411(b)(2) and the procedure has been rarely invoked in general, courts are in agreement that the provision is mandatory in nature, requiring district courts to solicit the advice of the Copyright Office when the statutory conditions are satisfied. See, e.g., DeliverMed Holdings, LLC v. Schaltenbrand, 734 F.3d 616, 623 (7th Cir. 2013) ("[T]he statute obligates courts to obtain an opinion from the Register . . . ."); Roberts v. Gordy, 2016 WL 1441465, at *9 (S.D. Fla. Apr. 8, 2016) ("When there is a question regarding the accuracy of the information contained on a registration, the Court's referral of the matter to

2

the Register of Copyrights under § 411(b)(2) is mandatory."); Schenck v. Orosz, 105 F. Supp. 3d 812, 818 (M.D. Tenn. 2015) ("By its terms, § 411(b)(2) requires the court to seek an advisory opinion from the Register in any case that 'alleges' inaccurate information under § 411(b)(1) that, if known to the Register, would have caused the Register to refuse registration."); Olem Shoe Corp. v. Wash. Shoe Co., 2010 WL 3505100, at *2 (S.D. Fla. Sept. 3, 2010) ("[T]he statutory language -- 'shall request' -- is mandatory."). Indeed, in DeliverMed, the Seventh Circuit found that the district court's invalidation of a copyright registration without complying with the procedure set forth in § 411(b)(2) was reversible error, even though the parties had not asked the district court to consult the Copyright Office. See DeliverMed, 734 F.3d at 624.

At the same time, courts have recognized that the referral procedure is vulnerable to abuse and have urged caution. See id. at 625 ("Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future."); Schenck, 105 F. Supp. 3d at 818 (articulating concern "that § 411(b)(2) creates a serious potential for abuse by introducing a mechanism by which infringers can throw up roadblocks to merited infringement lawsuits, simply by 'alleging' technical violations of the underlying copyright registrations"); Olem Shoe Corp., 2010 WL 3505100, at *3 n.4 ("[Section] 411(b)(2) gives a party accused of copyright infringement another weapon to delay the proceedings in district court, as [plaintiff] has done in this

case."). Cognizant of this concern, the Seventh Circuit in DeliverMed held that courts are not required to seek immediate input from the Copyright Office after a party alleges the inclusion of knowingly inaccurate information in a copyright application. See DeliverMed, 734 F.3d at 625. Indeed, "courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality." Id. In other words, before making a referral to the Copyright Office under §411(b)(2), a district court may require a litigant to "demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office." Id.

   This approach appropriately balances the Copyright Office's statutory right to weigh in on the materiality of a knowing misrepresentation in an application for copyright registration, on the one hand, against the district court's "inherent power to control its own docket and to prevent abuse in its proceedings," on the other. Ralph Lauren Corp. v. U.S. Polo Ass'n, Inc., 2014 WL 4377852, at *5 (S.D.N.Y. Sept. 4, 2014). That is particularly the case given that the Copyright Office itself has taken the position that "before asking the Register whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact." See Response of the Register of Copyrights to Request Pursuant to 17 U.S.C.

§ 411(b)(2) at 12, <u>Olem Shoe Corp. v. Wash. Shoe Co.</u>, 09 Civ. 23494 (S.D. Fla.), ECF No. 209.[1] And while this Court very much shares the concern of other courts that this statutory mechanism could be improperly invoked by defendants as a delay tactic, nothing in § 411(b)(2) prevents courts from imposing a deadline by which the Copyright Office must provide its response to the Court's request. Nor does § 411(b)(2) require courts to stay proceedings while a court's request for an advisory opinion is pending. Absent unusual circumstances, discovery can continue apace, as it will in this case.

In its motion, defendant argues that plaintiff's predecessor (also referred to herein as "plaintiff" for the sake of simplicity) knowingly misrepresented in its May 18, 2001 copyright application -- which resulted in the issuance of the June 2001 Registration -- that the photographs it sought to register had not previously been published.[2]

---

[1] In its response to the district court's request for an advisory opinion in <u>Olem Shoe Corp.</u>, the Copyright Register also noted "that the statute says nothing about the timing of the request" and that, in its view, "the court retains the power to delay the request until a factual record has been developed." Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 11, <u>Olem Shoe Corp.</u>, 09 Civ. 23494 (S.D. Fla.), ECF No. 209.

[2] Publication is defined by statute as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending," or "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101. While previously published works may be registered with the Copyright Office, the regulations governing registration of such works are more stringent in certain respects than those

5

By way of background, on May 28, 1999, plaintiff filed an application with the Copyright Office to register over 900 photographs as an unpublished collection titled "Past Mug Shots Images on the Stock Market Web site as of 2/29/99."[3] Decl. of Thomas Kjellberg dated April 26, 2016 ("Kjellberg Decl."), Ex. 1, ECF No. 34-1. By letter dated March 14, 2000, the Copyright Office notified plaintiff that it was "delaying" registration because, among other reasons, aspects of the application and the deposit material (i.e., the works plaintiff sought to register) "indicate[d] that publication ha[d] occurred," even though plaintiff's application had left the "Date and Nation of First Publication" space blank. Id., Ex. 2 at 1. Specifically, in addition to the application's reference to February 29, 1999 in the "Title" space,[4] the deposit material -- which appears to have been a print-out from the web site of plaintiff's agent at the time, see id., Exs. 3, 7 -- contained a footer on most pages with the date "3/22/99," id., Ex. 3. The letter also noted that plaintiff had attached a somewhat cryptic document

---

governing registration of unpublished works and would potentially require multiple applications at increased expense to the applicant.

[3] Though the words "as of 2/29/99" are not visible in the copy of the May 28, 1999 application produced in this case by plaintiff, the parties agree that plaintiff titled the collection of images to be registered as such. See Decl. of Pat Kane dated May 4, 2016, ¶ 9, ECF No. 37. The words "as of 2/29/99" were apparently redacted by Ms. Kane from the May 28, 1999 application at a later point. See id. ¶ 17 (noting that the application became "a mess with white out").

[4] As the Copyright Office's March 14, 2000 letter noted, there was no twenty-ninth day of February in the year 1999. See Kjellberg Decl., Ex. 2 at 1.

to its application stating that "[a] stock catalog/ CD / web site containing these photographs were previously registered, however that registration did not apply to this specific photograph, only in the authorship in the catalog claimed by the Stock Market Photo Agency." Id., Ex. 1. The Copyright Office's March 14, 2000 letter contained detailed instructions regarding how plaintiff should address and correct the perceived errors in its application.[5]

In an undated letter sent by the Copyright Office to plaintiff sometime thereafter, the Office stated that it was closing its file on plaintiff's application since it had not received a reply to its letter. See id., Ex. 5. The letter further stated that "[i]f you wish to re-apply for registration[,] [i]t will be necessary to submit a new application, deposit and fee." Id., Ex. 5.

On May 18, 2001, plaintiff filed a second copyright application form to register its "Past Mug Shots Images on the Stock Market Web Site," once again as an unpublished collection, but this time without the words "as of 2/29/99" in the "Title" space and without the additional document referring to a previous registration. See id., Ex. 6. Based on plaintiff's second application and despite the issues raised in its March 14, 2000 letter, the Copyright Office issued Registration No. VAu 529-623, with an effective date of June 25, 2001. See id.

---

[5] The March 14, 2000 letter also left open the possibility that publication had not occurred. See Kjellberg Decl., Ex. 2 at 2 ("Alternatively, if publication has not occurred, please leave all of space 3b blank.")

According to plaintiff, far from having any nefarious motive to mislead the Copyright Office, it was acting at that Office's direction. Its principal, Patricia Kane, avers that she "had numerous conversations with the Copyright Office regarding [her] application and followed the instructions [she] was given to correct [her] application and to secure the VAu 529-623 registration." Decl. of Pat Kane dated May 4, 2016, ¶ 8, ECF No. 37. As recounted by Ms. Kane, in response to the Copyright Office's March 14, 2000 letter, she explained to the Copyright Examiner that the web site with the "3/22/99" footer was a "beta version" that did not become available to the public until later.[6] Id. ¶ 10. Ms. Kane claims that the Copyright Office, disabused of its misconceptions, then asked her to submit a new form (with the date in the title removed) because the first one was "such a mess with white out." Id. ¶ 17. Ms. Kane says she did so, without a new deposit, on May 18, 2001. See id. ¶¶ 17-18. Ms. Kane further avers that in February 2012 she contacted a person by the name of Chanda Malik at the Copyright Office, see id. ¶ 19, and was advised by Ms. Malik (whose title is not identified)

---

[6] Defendant disputes this contention on reply, submitting internet snapshots of the web site dated February 18, 1999, which would suggest that the site was accessible to the public as of that date. However, the Court need not resolve the disputed question of when publication occurred at this juncture, because it is undisputed that publication occurred prior to the filing of the May 18, 2001 application. In the interest of efficiency, when making its referral to the Copyright Office, the Court may ask the Copyright Office to address both whether it would have refused registration if it knew publication had occurred prior to May 18, 2001, and whether it would have refused registration assuming arguendo that publication occurred prior to May 28, 1999.

8

that the June 2001 Registration "was valid because the Copyright Office does not require applicants to alter registration information when the status of the collection changes from unpublished to published during the course of the registration process," id. ¶ 20.[7]

Plaintiff provides no documentary evidence for any of these assertions in Ms. Kane's declaration. But even crediting all of them, defendant has met its burden of demonstrating that the statutory criteria for a mandatory referral have been satisfied. Critically, it is undisputed that the works plaintiff sought to register in its May 18, 2001 application had been published prior to plaintiff's filing of that application. Plaintiff's 30(b)(6) witness, Ms. Kane, admitted as much at deposition. See Kjellberg Decl., Ex. 7 at 221 ("By the time I filed the corrected application, all of [the works] had been published."); see id. at 231 (testifying that the images were published prior to March 18, 2001 because the

---

[7] Plaintiff makes various other assertions regarding Ms. Kane's communications in its opposition brief that are not supported by Ms. Kane's declaration, for which no evidence is cited, and which are blatant hearsay. For example, plaintiff asserts in its brief that the Copyright Examiner told Ms. Kane to remove the information she had provided in Section 5 of her May 28, 1999 application. See Mem. in Opp. to Def.'s Mot. for Issuance of Request to Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 5-6, ECF No. 36. But Ms. Kane's declaration does not say that and the assertion is hearsay in any case. Similarly, plaintiff asserts that a Copyright Office employee told Ms. Kane prior to her filing of the May 18, 2001 application "that once an application is started for an unpublished collection then the registration issues for an unpublished collection even if the collection has been published in the interim." Id. at 15. Again, Ms. Kane's declaration does not say that -- it describes a conversation with a Copyright Office employee in 2012 -- and, again, it is hearsay regardless.

9

web site on which they were offered for licensing had "gone live" by that point). Plainly then, the May 18, 2001 application contained "inaccurate information" insofar as it indicated that the images at issue had not been published, when they in fact had been published.

Significantly, plaintiff offers no evidence that the Copyright Office knew that the collection had been published prior to May 18, 2001. Instead, plaintiff casts the May 18, 2001 application as part of the same ongoing "registration process"[8] -- despite the Copyright Office's March 14, 2000 letter stating that it was closing its file and that a new application would be necessary -- and asserts (relying only on an inadmissible hearsay statement offered by Ms. Kane) that the Copyright Office does not require the alteration of registration information when publication occurs during the course of a registration process. If plaintiff is correct in its premises, then it may expect a favorable advisory opinion from the Copyright Office. But the salient point for purposes of this motion is that the May 18, 2001 application contained inaccurate information. Whether that inaccurate information is material to the Copyright Office is precisely what the procedure codified at § 411(b)(2) is designed to clarify.

---

[8] In support of this proposition, plaintiff makes much of the fact that the deposit for the June 2001 Registration is stamped June 1, 1999 -- presumably because it is the same deposit that was submitted with the May 28, 1999 application. This hardly establishes that the Copyright Office considered or would consider the May 28, 1999 application and the May 18, 2001 application to be part of a single registration process.

10

While plaintiff objects that there is no evidence that plaintiff <u>knew</u> the information was inaccurate, plaintiff's 30(b)(6) witness testified that the works had been published by the time the May 18, 2001 application had been filed, which plaintiff surely would have known at the time as well. Nor is plaintiff correct that the statute requires a showing of fraudulent intent on the part of the applicant. <u>See</u> <u>Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.</u>, 896 F. Supp. 2d 223, 231 (S.D.N.Y. 2012) (noting that fraudulent intent is required to invalidate a copyright registration under § 411 only where "the work in question would still have been eligible for copyright had the registration application contained a correct statement of the facts" (citation omitted)). The standard is whether the applicant knowingly included inaccurate information on its application that could have led the Copyright Office to refuse registration. And given that wrongly identifying published works as unpublished has been deemed a "fundamental registration error" requiring invalidation of a copyright registration, <u>id.</u> at 230 (internal quotation mark omitted), it is more than plausible that "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration," § 411(b)(1)(B).[9]

Thus, the statutory criteria for mandatory referral under § 411(b)(2) have been met.

---

[9] This conclusion is reinforced by the fact that, as stated in its March 14, 2000 letter, the Copyright Office had already delayed registration of plaintiff's works because it suspected the works had been published. See Kjellberg Decl., Ex. 2.

Plaintiff's alternative arguments for denial are meritless. First, plaintiff argues that defendant's motion is "essentially" moot because seven of the eight images registered under the June 2001 Registration at issue were subsequently registered under a separate registration in 2005 reflecting their published status. See Mem. in Opp. to Def.'s Mot. for Issuance of Request to Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) ("Pl.'s Opp.") at 18, ECF No. 36. Plaintiff submits that, if necessary, it would seek leave to file a second amended complaint asserting these images under this subsequent registration. However, plaintiff's apparent assumption that leave to amend will be granted -- with discovery nearing its end and summary judgment motion practice looming -- is unfounded. Indeed, the filing of a second amended complaint would likely require the re-opening of discovery and result in meaningful delay.[10] Thus, the Court is skeptical that any such motion would be granted. But even if leave to amend were granted, that would not moot the instant motion since one of the images registered under the June 2001 Registration (identified as Image 14 in the First Amended Complaint) was apparently not subsequently registered.

---

[10] Even though the First Amended Complaint already asserts infringement of five separate images that are registered under the subsequent 2005 registration, the assertion of eight more images under this registration would place substantially more importance on the 2005 registration (the validity of which is also subject to challenge) at a point at which discovery will have already closed. The later date of the registration could also substantially affect liability and damages.

Second, plaintiff submits that the "motion should be dismissed as improper, and Rosen's counsel sanctioned" because, among other reasons, Rosen's counsel "willfully failed to advise the Court that the **identical** motion, seeking the **identical** relief based on the **identical** evidence, **brought by the identical** counsel . . . currently is pending before . . . another court in this District." Pl.'s Opp. at 10. Plaintiff asserts that this "blatant and improper forum shopping for a second bite of the apple should not be tolerated." Id. at 11. As an initial matter, plaintiff is wrong that defense counsel failed to advise the Court of its parallel motion; defense counsel expressly did so at the April 20, 2016 conference at which defendant obtained leave to file the instant motion and at which plaintiff's counsel was present. More to the point, defense counsel has brought substantially the same motion before another court in this District because plaintiff sued an entity owned by the "same real party in interest" on the same day that it sued Rosen, id. at 1, asserting infringement of plaintiff's copyright in various images registered under the same June 2001 Registration. See Compl. ¶ 15, Palmer Kane LLC v. Gareth Stevens Publishing, 15 Civ. 7404 (S.D.N.Y.), ECF No. 1. If plaintiff wished to avoid the prospect of inconsistent rulings, it could have marked the two cases as related. It chose not to and will not now be heard to complain that defense counsel has brought the same motion in both cases, let alone that defense counsel should be sanctioned for doing so.

13

In sum, the Court finds that defendant has met its burden under § 411(b)(2) of demonstrating that a referral to the Copyright Office is warranted and, indeed, required. As such, the Court grants defendant's motion and will issue a request to the Register of Copyrights to advise the Court whether knowledge that the works registered under Registration No. VAu 529-623 had been published prior to May 18, 2001 would have caused the Register to refuse registration. Before doing so, however, the Court will grant each party leave to file a two-page letter with the Court, by no later than June 1, with no more than three questions that it proposes the Court submit to the Copyright Office. Each party may briefly explain the basis of each proposed question. The parties are urged to confer regarding the language of their proposed questions with the objective of reaching agreement on appropriate phrasing that is consistent with this Memorandum Order. In any case, regardless of whether agreement is reached, the Court will consider the proposed questions and promptly issue its request to the Copyright Office.

The Clerk of the Court is directed to close the motion at document number 33 of the docket of this case.

SO ORDERED.

Dated:  New York, NY
        May 27, 2016                         _____
                                             JED S. RAKOFF, U.S.D.J.

14