UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
PALMER/KANE LLC,                         :
                                         :
                                         :    15-cv-7406 (JSR)
       Plaintiff,                        :
                                         :    OPINION AND ORDER
       -v-                               :
                                         :
ROSEN BOOK WORKS LLC d/b/a ROSEN         :
PUBLISHING GROUP, INC.,                  :
                                         :
       Defendant.                        :
----------------------------------------x



JED S. RAKOFF, U.S.D.J.

     In this copyright action, plaintiff Palmer/Kane LLC

("Palmer/Kane") brings suit against defendant Rosen Book Works LLC

("Rosen") alleging infringement of plaintiff's copyrights in

numerous stock photographs (the "Images"). Both parties sought

summary judgment on the 11 remaining Images at issue. At the final

pre-trial conference held on August 3, 2016, the Court awarded

summary judgment to defendant on plaintiff's claims arising out of

defendant's alleged infringement of Image Nos. 1, 8, 10, 12, 15, 16,

and 18.[1] In a "bottom-line" Order issued the next day, the Court also

awarded summary judgment to defendant on plaintiff's claims arising

out of defendant's alleged infringement of Image Nos. 6 and 13. In

the same Order, the Court also awarded summary judgment to plaintiff

---

[1] The Court's identification of a given Image tracks the
identification of that Image in the First Amended Complaint. See
First Am. Compl., ¶ 16, ECF No. 19.

as to infringement on plaintiff's claims arising out of defendant's use of Image Nos. 2 and 5, leaving the issue of damages flowing from such infringement for trial. This Opinion and Order explains the reasons for those rulings.

Plaintiff Palmer/Kane is a stock photography production company that has been in business since 1975. See Palmer/Kane LLC's Rule 56.1 Statement in Support of Its Mot. for Partial Summ. J. of Copyright Infringement ("Pl.'s Local Rule 56.1 Stmt.") ¶¶ 4, 5, ECF No. 55.[2] Palmer/Kane licenses its stock photography through licensing agencies such as non-parties Corbis Corporation and Alamy Limited. See id. ¶ 4. Defendant Rosen has been in the business of creating and publishing children's library books since 1981. See Decl. of Roger Rosen in Further Support of Def.'s Mot. for Partial Summ. J. dated July 18, 2006 ("Rosen Decl. dated July 18, 2016"), ¶ 1, ECF No. 74.

Over the relevant time period, Rosen licensed plaintiff's images through Corbis on an ongoing basis under a series of Preferred Pricing Agreements ("PPAs") that set out the terms, rights, and pricing that governed Rosen's use of images licensed from Corbis. See Decl. of Steve Spelman dated June 25, 2016 ("Spelman Decl. dated June 25, 2016"), ¶¶ 4-5, ECF No. 65. The first PPA (the "2003 PPA") became effective September 12, 2003. See Decl.

---

[2] All citations to facts set forth in a party's Local Rule 56.1 Statement are citations to facts that were undisputed in relevant part by the opposing party, unless otherwise noted.

of Clyde A. Shuman in Opp'n to Def.'s Mot. for Partial Summ. J.
dated July 11, 2016 ("Shuman Decl. dated July 11, 2016"), Ex. 1, ECF
No. 62-1. The second PPA (the "2006 PPA"), which superseded the 2003
PPA, became effective May 15, 2006. See id. Ex. 2, ECF No. 62-2. The
third PPA (the "2008 PPA"), which superseded the 2006 PPA, became
effective October 6, 2008. See id. Ex. 3, ECF No. 62-3. Each PPA
incorporated a set of standard terms and conditions, referred to in
the 2003 PPA as the "Terms and Conditions," and in the 2006 and 2008
PPAs as the "End User License Agreement" (all referred to herein,
for the sake of simplicity, as "EULAs"). Each of the three EULAs
specified, inter alia, that images obtained from Corbis were
licensed for use by Rosen within one year from the date of the
relevant invoice for such use. See 2003 PPA at 6; 2006 PPA, EULA
§ 3(b); 2008 PPA, EULA § 3(b). As a matter of practice, however,
Rosen would frequently use plaintiff's images prior to licensing the
images from Corbis.

In its operative pleading, Palmer/Kane alleged that Rosen
infringed its copyrights in 19 stock images, which Rosen allegedly
used in 21 publications either without a valid license or beyond the
scope of the license it had been granted. See First Am. Compl., Exs.
A, B. At the time the parties moved for summary judgment, however,
only 11 of Palmer/Kane's images remained in dispute: Image Nos. 1,
2, 5, 6, 8, 10, 12, 13, 15, 16, and 18.[3]

---

[3] Plaintiff voluntarily agreed to dismiss its infringement claims
relating to the eight other asserted images — all registered under

Plaintiff initially moved for partial summary judgment on its claims for infringement relating to Image Nos. 10, 12, 15, 16, and 18. Defendant initially moved for partial summary judgment on plaintiff's claims for infringement relating to Image Nos. 1, 2, 5, 6, 8, 10, 12, and 13, in addition to one of plaintiff's claims relating to Image No. 16. However, in their opposition briefs, both parties requested summary judgment on all Images its adversary was moving on as well, such that plaintiff sought summary judgment as to infringement for each of the 11 Images at issue and such that defendant sought dismissal of plaintiff's action in its entirety. Since each side had a chance to reply to these broadened requests, both in papers and in oral argument, the Court treated the broadened requests as the appropriate scope of the respective motions.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a genuine dispute of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and, to award summary judgment, the court must be able

---

Registration No. VAu 529-623 — after the Court granted defendant's motion for a referral to the Copyright Office regarding whether that Office would have refused registration had it known that certain information included in plaintiff's underlying registration application was inaccurate. See Order dated June 7, 2016 at 1-2, ECF No. 48; Palmer/Kane LLC v. Rosen Book Works LLC, 2016 WL 3042895, at *6 (S.D.N.Y. May 27, 2016) (granting defendant's request for a referral to the Copyright Office pursuant to 17 U.S.C. § 411(b)(2)).

to find "after drawing all reasonable inferences in favor of a non-
movant" that "no reasonable trier of fact could find in favor of
that party," Heublein, Inc. v. United States, 996 F.2d 1455, 1461
(2d Cir. 1993). However, with respect to issues as to which the
burden of proof lies with the nonmoving party, "the burden on the
moving party may be discharged by 'showing' — that is, pointing out
to the district court — that there is an absence of evidence to
support the nonmoving party's case." Celotex Corp. v. Catrett, 477
U.S. 317, 325 (1986). A fact is considered material "if it might
affect the outcome of the suit under the governing law," and a
dispute of fact is deemed genuine when "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (internal
quotation marks omitted).

To prevail on a claim for copyright infringement, a plaintiff
must demonstrate "(1) ownership of a valid copyright, and (2)
copying of constituent elements of the work that are original."
Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361
(1991). "When the contested issue is the scope of a license, rather
than the existence of one, the copyright owner bears the burden of
proving that the defendant's copying was unauthorized under the
license . . . ." Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998);
see also Harris v. Simon & Schuster, Inc., 646 F. Supp. 2d 622, 630
(S.D.N.Y. 2009) ("A valid license, either exclusive or non-
exclusive, immunizes the licensee from a charge of copyright

infringement, provided that the licensee uses the copyright as agreed with the licensor." (internal quotation marks omitted)).

However, under the Copyright Act (subject to certain exceptions not relevant here) "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Though the Supreme Court has clarified that this "precondition to filing a claim" is not jurisdictional in nature, Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (2010), "proper registration is a prerequisite to an action for infringement," Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 453 (2d Cir. 1989). See also Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc., 896 F. Supp. 2d 223, 229 (S.D.N.Y. 2012) ("A copyright holder may only sue for infringement of that copyright if it possesses a valid copyright registration." (emphasis added)). Under 17 U.S.C. § 410(c), a certificate of copyright registration "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate," and, "[o]rdinarily, a copyright registration is presumed valid," Overseas Direct Imp. Co. v. Family Dollar Stores Inc., 929 F. Supp. 2d 296, 309 (S.D.N.Y. 2013). However, "the presumption of validity may be rebutted where other evidence in the record casts doubt on the question." Fonar Corp. v. Domenick, 105 F.3d 99, 104 (2d Cir. 1997) (internal quotation marks and alteration omitted).

Here, Rosen argues that Image Nos. 8, 12, 15, 16, and 18 are not validly registered under Registration No. VA 1-297-358 (the "'358 Registration");[4] that Image Nos. 1 and 13 are not validly registered under Registration No. VA 1-816-720 (the "'720 Registration"); and that Image No. 10 is not validly registered under Registration No. VA 1-811-724 (the "'724 Registration"). In particular, Rosen contends that although these Registrations were apparent "group" registrations, they do not satisfy the conditions upon which such registrations may be made — at least as to the photographs in question. Palmer/Kane counters that the Registrations are not group registrations, but rather registrations for compilations.

As a threshold matter, Palmer/Kane's insistence that Rosen's argument is not properly before the Court as to Image Nos. 1 and 8 is misplaced. Although defendant introduced its argument regarding these Images in opposition to a motion that did not encompass these Images, plaintiff was on notice of defendant's argument and conceded at oral argument that its position as to these Images was "the same." Transcript dated August 3, 2016, at 4, ECF No. 79. It would

---

[4] In an apparent oversight, Rosen did not mention Image No. 18 in the heading for its argument in this regard. See Mem. of Law in Opp'n to Pl. Palmer/Kane LLC's Mot. for Partial Summ. J. at 3 ("Registration No. VA 1-297-358 Is Invalid As To Palmer/Kane's Images Nos. 8, 12, 15 and 16"), ECF No. 63. However, Rosen very clearly included Image No. 18 in the scope of its argument, and plaintiff made plain that it understood that to be the case as well. See Reply Mem. in Further Support of Pl.'s Mot. for Partial Summ. J. of Copyright Infringement at 2 ("Registration No. VA 1-297-358 is Valid for Image Nos. 12, 15, 16 and 18"), ECF No. 69.

meaninglessly elevate form over substance to send plaintiff's claims relating to Image Nos. 1 and 8 to trial when they suffer from precisely the same defect as other dismissed claims. Such claims would be "predestined to result in a directed verdict" and it is the purpose of summary judgment to avoid such pointless exercises. Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997). Moreover, it is well established that the Court has inherent discretion to grant summary judgment sua sponte so long as "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried" - as was the case here. Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011) (citation omitted); see also Celotex Corp., 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

Turning to the merits of Rosen's invalidity argument, the Register of Copyrights is authorized by statute to promulgate regulations which may "require or permit . . . a single registration for a group of related works." 17 U.S.C. § 408(c)(1). The Register of Copyrights has exercised that authority "by promulgating rules allowing for group registration for 'automated databases,' 'related serials,' 'daily newspapers,' 'contributions to periodicals,' 'daily newsletters,' and 'published photographs.'" Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 204 (3d Cir. 2005). Under those

8

rules, group registration of published photographs is permitted only

if "the photographs in the group [] have been published within the

same calendar year." 37 C.F.R. § 202.3(b)(10)(iii) (emphasis added).

The rules also set forth the procedure an applicant who wishes to

register published photographs as a group must follow:

> If the photographs in a group were not all published on
> the same date, the range of dates of publication (e.g.,
> February 15–September 15, 2004) must be provided in space
> 3b of the [registration] application, and the date of
> publication of each photograph within the group must be
> identified either:
>
> > (A) On each deposited image;
> >
> > (B) In a text file on the CD-ROM or DVD that contains
> > the deposited photographic images;
> >
> > (C) On a list that accompanies the deposit and
> > provides the publication date for each image; or
> >
> > (D) On a special continuation sheet (Form GR/PPh/CON)
> > provided by the Copyright Office. Dates of
> > publication must be provided in a way that clearly
> > identifies the date of publication for each
> > individual photograph in the group.

Id. § 202.3(b)(10)(iv).

In addition, if each photograph in the group was published

within three months of the filing of the application, the applicant

may "simply state the range of dates of publication (e.g., February

15–May 15, 2001) in space 3b of the application, without

specifically identifying the date of publication of each photograph

in the group either on the deposited image or on a continuation

sheet." Id. § 202.3(b)(10)(vi).

Group registration carries important advantages for copyright holders, since it requires only one fee to register multiple works, all of which are entitled to the § 410(c) presumption of validity and all of which may be sued upon individually. See 5 William F. Patry, Patry on Copyright § 17:92. Given the significant advantages conferred by group registration, it follows that "compliance with the applicable regulations should be strictly enforced." Id.

The '358 Registration, which issued on February 2, 2005 under the title "Corbis website as uploaded July 2002," covers hundreds of photographs. See Decl. of Thomas Kjellberg in Support of Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. dated July 11, 2016 ("Kjellberg Decl. dated July 11, 2016"), Ex. 2. Plaintiff's predecessor's application for the '358 Registration states in Space 3B that the registered photographs were first published in July 2002. See Decl. of Clyde A. Shuman in Support of Palmer/Kane LLC's Mot. for Partial Summ. J. of Copyright Infringement dated June 27, 2016 ("Shuman Decl. dated June 27, 2016"), Ex. 3, ECF No. 54-3 at 2. Documents produced by plaintiff in this action, however, reflect that Corbis issued licenses on plaintiff's behalf for Image Nos. 8, 12, 15, 16, and 18 on a variety of dates in 2000 and 2001 (i.e., well prior to July 2002 and not within the same calendar year). See Kjellberg Decl. dated July 11, 2016, Exs. 4-12, 14-19. As such, defendant argues that the inclusion of these already-published[5]

---

[5] Congress has defined publication to include "[t]he offering to distribute copies or phonorecords to a group of persons for purposes

photographs in the '358 Registration was improper and that the protection of that Registration cannot extend to those photographs. See U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1116.1 (3d ed. 2014) ("Photographs that do not satisfy these requirements cannot be registered using this group registration option."); Family Dollar Stores, Inc., 896 F. Supp. 2d at 231-32 (holding that registration of purportedly unpublished collection was invalid with respect to previously published designs because error was "material" and not "technical" in nature).

Plaintiff does not dispute that Image Nos. 8, 12, 15, 16, and 18 were licensed for publication prior to 2002. See Def.'s Counterstatement in Response to Pl.'s Statement Pursuant to Local Civil Rule 56.1 ("Def.'s Local Rule 56.1 Counterstatement") ¶ 44, ECF No. 64.[6] Nor does it contend that the '358 Registration complied with the group-registration regulations. Instead, it asserts that the '358 Registration is not a group registration at all, but rather a compilation, to which the group-registration regulations do not

---

of further distribution, public performance, or public display." 17 U.S.C. § 101.

[6] Plaintiff declines to admit this fact with respect to Image No. 8 on the asserted basis that Rosen's argument should not be permitted to extend to Images on which plaintiff did not move for summary judgment. The Court has rejected this argument for the reasons explained supra. For purposes of the instant cross-motions, plaintiff has admitted the asserted fact with respect to Image No. 8 by failing to "specifically controvert[]" it. S.D.N.Y. Local Civ. R. 56.1(c); see also Fed. R. Civ. P. 56(e)(2).

apply.[7] See Transcript dated August 3, 2016 at 4. This argument is
not credible, however, for the simple reason that plaintiff left
Space 6 of its registration application - which calls for applicants
registering compilations to "[g]ive a brief, general statement of
the material that has been added to this work and in which copyright
is claimed" - entirely blank. Shuman Decl. dated June 27, 2016, Ex.
3, ECF No. 54-3 at 5. Such a statement is explicitly required by
statute. See 17 U.S.C. § 409(9) ("The application for copyright
registration . . . shall include . . . in the case of a compilation
or derivative work, an identification of any preexisting work or
works that it is based on or incorporates, and a brief, general
statement of the additional material covered by the copyright claim
being registered.").

Where the registration applicant "le[aves] the portion of the
copyright registration form pertaining to compilations entirely
blank," this "constitutes uncontroverted evidence that the
photographs were never meant to be registered as a compilation."
Senisi v. John Wiley & Sons, Inc., 2015 WL 7736545, at *4 (S.D.N.Y.
Nov. 30, 2015) (dismissing copyright infringement claim because

---

[7] Multiple works may also be registered for copyright protection at
one time through a "single work" registration. 37 C.F.R.
§ 202.3(b)(4). However, plaintiff does not and cannot argue that its
works were registered as a "single work registration" because
published "works may be protected under a single registration only
if they were published for the first time together as a 'single unit
of publication.'" Senisi v. John Wiley & Sons, Inc., 2015 WL
7736545, at *3 (S.D.N.Y. Nov. 30, 2015) (quoting 37 C.F.R.
§ 202.3(b)(4)(i)(A)).

"[plaintiff's] attempt to retroactively recast [its registration] as a compilation or a single work registration in order to avoid its defects as a group registration [was] unavailing"). In Thron v. HarperCollins Publishers, Inc., 2002 WL 1733640 (S.D.N.Y. July 26, 2002), the copyright holder similarly attempted to belatedly construe the copyright registration at issue as a compilation, even though he had "left entirely blank the section of the application form entitled 'Derivative Work or Compilation,'" i.e., Space 6. Id. at *1.[8] Noting that the plaintiff had not adopted that position until summary judgment, this Court rejected the plaintiff's "new-found theory [as] not only belated but without evidentiary support" and dismissed his copyright infringement claim accordingly. Id.

The circumstances are no different here. Plaintiff does not even submit a declaration from its principal attesting to her intent to register the photographs as a compilation or explaining, if that

---

[8] Though neither party mentions it, the group-registration regulations require that the applicant identify the registration application as for "Group Registration/Photos" in Space 1 of the application and estimate the approximate number of photographs in the group. 37 C.F.R. § 202.3(b)(10)(viii). Plaintiff's predecessor did not do that either and plaintiff could perhaps have argued that this failure should be taken as evidence that it intended to register the photographs as a compilation. Any such argument would be unpersuasive, however. One would need to have familiarity with the complex group-registration regulations to be aware of the aforementioned requirements for group registrations of photographs, which are not stated on the face of the application form. By contrast, Space 6 of the application form is conspicuously titled "Derivative Work or Compilation" and is explicitly required to be completed when registering a compilation. Shuman Decl. dated June 27, 2016, Ex. 3, ECF No. 54-3 at 5. To put it in layman's terms, "you can't miss it."

13

is so, on what basis she left Space 6 blank. Indeed, at oral
argument on the instant motions, plaintiff's counsel admitted that
"[i]t is not clear, as Rosen points out, what [the photographs] were
registered as." Transcript dated August 3, 2016 at 4. As such,
defendant has conclusively rebutted the presumption that Image Nos.
8, 12, 15, 16, and 18 are validly registered. Plaintiff's "[m]ere
conclusory . . . denials . . . cannot by themselves create a genuine
issue of material fact where none would otherwise exist." See Hicks
v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation mark
omitted). Accordingly, because the statutory prerequisite of a
validly registered copyright has not been met, plaintiff's
infringement claims relating to Image Nos. 8, 12, 15, 16, and 18
must be dismissed.[9]

---

[9] Plaintiff does not raise an "innocent error" defense and for good
reason. Though the Second Circuit has held that "only the knowing
failure to advise the Copyright Office of facts which might have
occasioned a rejection of the application constitute[s] reason for
holding the registration invalid," Eckes v. Card Prices Update, 736
F.2d 859, 861-62 (2d Cir. 1984) (emphasis added) (internal quotation
mark omitted), it has since found that where errors go beyond "minor
'technical misdescriptions'" and "render the registration[]
completely inaccurate," the registration cannot be deemed valid.
Morris v. Bus. Concepts, Inc., 259 F.3d 65, 72 (2d Cir. 2001),
abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559
U.S. 154 (2010); eScholar, LLC v. Otis Educ. Sys., Inc., 2005 WL
2977569, at *13 (S.D.N.Y. Nov. 3, 2005) ("Errors that 'render the
registrations completely inaccurate' are not protected by the
harmless error rule."); Family Dollar Stores, Inc., 896 F. Supp. 2d
at 231 ("The fraud requirement does not come into play when material
omissions or errors were made in the registration application.").
Here, plaintiff does not even suggest that Image Nos. 8, 12, 15, 16,
and 18 could be validly registered as part of the group
registration. Nor is it obvious that plaintiff would have obtained a
valid copyright registration if it had sought to register the three
relevant groups of photographs as compilations. Although a

14

The same analysis applies to Image Nos. 1 and 13, which were registered as part of a group of published photographs titled "Photographs by Gabe Palmer appearing on the revised Corbis.com website as of !/17/2012" (sic) under Registration No. VA 1-816-720, which issued on Jan. 18, 2012. Kjellberg Decl. dated July 11, 2016, Ex. 24, ECF No. 68-31. Although the '720 Registration indicates that the date of first publication of the registered works is January 30, 2010, plaintiff's own royalty statements reveal that Image No. 1 was licensed as early as 2001, see id. Ex. 25, ECF No. 68-32, and that Image No. 13 was licensed as early as 2002, see Decl. of Thomas Kjellberg in Support of Def.'s Reply on Its Mot. for Partial Summ J. dated July 18, 2016, Exs. 2, 3, ECF Nos. 75-2, 75-3. As with the '358 Registration, plaintiff contends that the '720 Registration is for a compilation of works to which the group-registration regulations do not apply. That argument fails for the same reasons that it fails with respect to the '358 Registration.[10]

---

compilation need only "display some minimal level of creativity" to be copyrightable, Feist Publ'ns, Inc., 499 U.S. at 358, the "mass registration of photographs" has been found not to satisfy this requirement where plaintiff "simply consolidated all of the photographs she had created over the past seventeen years in a single place, and offer[ed] no evidence demonstrating that she took any further steps to imbue this collection with any sort of original or creative element," Senisi, 2015 WL 7736545, at *3.

[10] In another apparent oversight, defendant did not state it was seeking summary judgment as to Image No. 13 on this ground until filing its reply brief in support of its motion for partial summary judgment — and, even then, it did so obliquely. Nonetheless, the Court's analysis applies in the same way to Image No. 1 as it does to Image No. 13 and, as noted supra, it is well settled that the Court may enter summary judgment sua sponte in appropriate circumstances. As with Image Nos. 1 and 8, it would be pointless to

Finally, the Court's analysis applies with equal force to Image No. 10, which was registered as part of a group of published photographs titled "Gabe Palmer's Zefa Images and latest Corbis images uploaded to Corbis.com," under Registration No. VA 1-811-724, which issued on October 12, 2011. Kjellberg Decl. dated July 11, 2016, Ex. 20, ECF No. 68-27. The '724 Registration indicates that the date of first publication of the registered works is January 30, 2006. As with the '358 Registration and the '720 Registration, however, plaintiff's own documents show that Image No. 10 was first published prior to 2006. See Def.'s Local Rule 56.1 Counterstatement ¶ 47; Kjellberg Decl. dated July 11, 2016, Exs. 21-23. Plaintiff does not contest these facts, but instead relies on the same meritless contention that the '724 Registration is for a compilation, which the Court once again rejects.

In sum, the Court dismisses plaintiff's infringement claims arising from defendant's use of Image Nos. 1, 8, 10, 12, 13, 15, 16, and 18 because those Images are not validly registered with the Copyright Office and because proper registration is a precondition to bringing an action for copyright infringement.

After oral argument on the instant cross-motions, the parties filed one-page letters with the Court taking dueling positions as to whether the Court should dismiss these claims with or without

---

deny summary judgment to defendant on plaintiff's claim premised on Image No. 13 when that claim is "predestined to result in a directed verdict." Lightfoot, 110 F.3d at 907.

prejudice.[11] In particular, plaintiff states that it intends to file expedited Corrective Actions with the Copyright Office and to re-assert these claims once those Corrective Actions issue (assuming they do). See Senisi v. John Wiley & Sons, Inc., 2016 WL 1045560, at *3 (S.D.N.Y. Mar. 15, 2016) (allowing plaintiff to re-assert claims dismissed on registration validity grounds because, among other reasons, "[c]ourts within this Circuit have consistently held that failing to meet a statutory precondition to suit . . . warrants dismissal without prejudice"). Defendant responds that a dismissal without prejudice would be inconsistent with the weight of authority, citing cases in which this Court dismissed infringement claims with prejudice. Because this issue has not been adequately briefed, the Court will refrain from dismissing the claims with prejudice at this time. If plaintiff seeks to re-assert these claims in the future for any reason, plaintiff will be required to seek the Court's leave to do so and the Court will take up the matter accordingly.[12]

The Court now turns to the remaining Images at issue: Image Nos. 2, 5, and 6.

Beginning with Image No. 2 (titled "Woman Drawing on Notepad"), Rosen licensed this image from Corbis under Invoice and License

---

[11] The parties' letters have been docketed with this Opinion and Order.

[12] In light of its holding, the Court need not reach defendant's argument that plaintiff is not entitled to seek statutory damages or attorneys' fees for defendant's alleged infringement of Image Nos. 15, 16, and 18.

Agreement Number 8011520 dated February 20, 2008 (the "February 2008 License"), for a distribution quantity of 10,000. See Decl. of Thomas Kjellberg in Support of Def.'s Mot. for Partial Summ. J. dated June 27, 2016 ("Kjellberg Decl. dated June 27, 2016"), Ex. 5, ECF No. 59-5. The printer's invoices for the Rosen publication containing the Image ("Cool Careers Without College For People Who Love Manga, Comics, And Animation") reflect a printing of 3,000 copies invoiced on July 10, 2006; a printing of 2,000 copies invoiced on January 17, 2007; and a printing of 2,100 copies invoiced on September 16, 2008, for a total of 7,100 copies. See Def.'s Statement Pursuant to Local Civil Rule 56.1 ("Def.'s Local Rule 56.1 Stmt.") ¶ 26, ECF No. 57.

Plaintiff contends that defendant's use of Image No. 2 prior to obtaining a license was infringing. See Tasini v. New York Times Co., 206 F.3d 161, 165 (2d Cir. 1999) ("The unauthorized reproduction and distribution of a copyrighted work generally infringes the copyright unless such use is specifically protected by the [Copyright] Act."). Indeed, the EULA incorporated into the 2006 PPA between Corbis and defendant is explicit that "[u]nless otherwise stated in the Invoice, the license granted hereunder for the applicable Rights Managed Content allows You to use the Rights Managed Content obtained hereunder for one year from the date the applicable Invoice is issued," and that "[e]xcept where specifically permitted on the Invoice for the applicable Content, You may not distribute, publish, display or otherwise use in any way, the Rights

Managed Content, including without limitation the End Use after the Term." 2006 PPA, EULA § 3(b) (emphasis added).[13]

Defendant submits that (1) its pre-license use was consistent with industry custom and the parties' course of dealing; and (2) that, even assuming its pre-license use was infringing, any infringement was cured retroactively when the February 2008 License issued. Both arguments fail.

As for defendant's first argument, defendant makes a persuasive showing that it is customary practice in the book publishing industry for publishers to reproduce copyrighted stock photography before obtaining licenses for such use. Defendant's expert avers that "stock photo agencies understand and accept the realities of the book publishing timeline and customarily allow for post-publication licensing as a matter of course." Decl. of Michael N. Ross in Support of Def.'s Opp'n to Pl.'s Mot. for Partial Summ J. dated July 7, 2016 ("Ross Decl. dated July 7, 2016"), Ex. 1 at 6, ECF No. 67-1. A former Corbis Group Account Manager similarly avers that "it was not unusual for there to be a time lag in licensing with a publisher that had an ongoing relationship with Corbis" and that "[w]hile reporting after the fact was the exception rather than the rule, we understood that it could happen." Decl. of Steve Spelman dated June 25, 2016 ("Spelman Decl. dated June 25, 2016"), ¶ 7, ECF No. 65.

---

[13] In sum and substance, the EULAs appended to the 2003 and 2008 PPAs provide the same. See 2003 PPA at 6; 2008 PPA, EULA § 3(b).

Nonetheless, evidence of custom and course of dealing cannot displace rights conferred by the copyright laws. See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble."); Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F. Supp. 2d 332, 348 (S.D.N.Y. 2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the entertainment industry, federal copyright law dictates the terms by which an exclusive license can be granted."). Rosen does not appear to seriously contend that its agreements with Corbis authorized pre-license use (something of a contradiction in terms), but rather that Corbis essentially looked the other way in the face of infringement.[14] Cf.

---

[14] Rosen makes virtually nothing of the fact that the 2006 PPA provides as follows: "Rosen agrees to notify Corbis of the Images used on a per usage basis. Rosen must include image IDs within each notice. Corbis will invoice Rosen according to this schedule." 2006 PPA at 5. The 2003 PPA provides the same. See 2003 PPA at 5. In isolation, this provision could be read to suggest that Rosen was authorized to "use" plaintiff's images as much as it wished before formally licensing them, such that its "pre-license" use was not infringing. But defendant does not even mention this provision, likely because the EULAs incorporated into the PPAs clarify that Rosen's pre-license use of Corbis images was strictly limited to "Comps" — the term the parties used to describe content licensed without a fee to Rosen for a term of 60 days in order to facilitate Rosen's internal evaluation of whether it actually wanted to pay for and use a given image for its contemplated purpose. See, e.g., 2006 PPA, EULA § 3(d) ("Corbis grants You the right to use Comps solely for Your internal evaluation to determine whether You intend to obtain a non-Comp license for the Content. You may not use Comps in any manner except for internal evaluation of the applicable Content to determine whether You wish to apply for a license for Rights

Spelman Decl. dated June 25, 2016, ¶ 6 ("In my experience Corbis did not treat a customer's use of a licensed photo in excess of or beyond the terms of the license in question as copyright infringement, but rather as a contractual matter to be resolved as part of the ongoing, mutually beneficial relationship between the publisher and Corbis.").[15] But that Corbis may have chosen not to view defendant's pre-license use as "infringing" is neither here nor there. Infringement is infringement, regardless of what Corbis and Rosen may have chosen to call it.

As noted, Rosen also contends that to the extent its pre-license use was infringing, the February 2008 License operated retroactively to cure the infringement. The success of this argument depends on Rosen establishing both that retroactive licensing is permissible as a matter of copyright law, and, assuming that it is, that the license in question operated retroactively as a matter of fact. Rosen can show neither.

In a 2007 case that included an extended treatment of the issue, the Second Circuit "h[e]ld that a license or assignment in copyright can only act prospectively." Davis v. Blige, 505 F.3d 90,

---

Managed Content or Royalty-Free content."); 2003 PPA at 6 ("Unless otherwise specified in a separate writing signed by Corbis, your reproduction of Images is limited to (i) internal evaluation or comps, or (ii) the specific use described in your invoice . . . ."). The "per usage" provision was not included in the 2008 PPA.

[15] Spelman's averment in this regard could be fairly paraphrased as "Corbis did not treat copyright infringement as copyright infringement."

104 (2d Cir. 2007). While one might think that would settle the issue, Rosen argues that Davis is inapposite because the Davis Court was addressing the "question of whether a copyright co-owner . . . can convey his copyright interest to a third party retroactively, thereby defeating a claim of infringement asserted against that third party by another co-owner." Id. at 101. That was indeed the question presented in Davis — and much of the decision's analysis focused on the particular problems raised by retroactive licensing in the copyright co-ownership context. See id. at 103 ("A 'retroactive' assignment or license that extinguishes the accrued infringement claims of a non-consenting co-owner by traveling back in time to 'undo' an unlawful infringement destroys the co-owner's valuable and vested right to enforce her claim."). But, contrary to defendant's contention, the Second Circuit "made clear that its holding extended beyond the context of co-ownership." N. Jersey Media Grp. Inc. v. Pirro, 2015 WL 1086566, at *4 n.6 (S.D.N.Y. Mar. 9, 2015) (rejecting identical argument because the Second Circuit's opinion in Davis "admits of no such limitation"). It did so by repeatedly casting its holding in broad terms, not limited to any one particular set of facts. See Davis, 505 F.3d at 103 ("Licenses . . . are prospective . . . ."); see id. at 104 ("[W]e hold that a license or assignment in copyright can only act prospectively."); see id. at 104 ("Licenses in patent and copyright function similarly . . . and thus it is appropriate to consider copyright licensing, like patent licensing, prospective in nature."); see id. at 104-05

("There is little from a policy perspective to recommend a rule that allows retroactive licenses or assignments, and there are two strong reasons disfavoring them . . . .").

It is true that Rosen's argument finds support in four post-_Davis_ decisions issued by judges in this District. _See_ _Wells v. John Wiley & Sons, Inc._, 2016 WL 889786, at *6 (S.D.N.Y. Feb. 17, 2016) ("If so authorized, licensees can license an author's works retroactively."); _Young-Wolff v. John Wiley & Sons, Inc._, 2016 WL 154115, at *5 (S.D.N.Y. Jan. 12, 2016) ("[A]n agreement between a licensing agent and a third party can, as a matter of law, retroactively cure claims of infringement asserted against that third party by the exclusive license holder."); _Spinelli v. Nat'l Football League_, 96 F. Supp. 3d 81, 123-24 (S.D.N.Y. 2015) ("As a matter of copyright law, copyright owners and exclusive licensees are free to grant such licenses 'after the fact' as they see fit."); _Wu v. Pearson Educ. Inc._, 2013 WL 145666, at *4 (S.D.N.Y. Jan. 11, 2013) ("Under ordinary circumstances, copyright licenses may be granted either prospectively or retroactively."). But this Court is constrained to disagree with these opinions.

The most detailed discussion in these four opinions is in Judge Oetken's thoughtful decision in _Young-Wolff_, which also involved a defendant that used copyrighted works before obtaining a license from plaintiff's licensing agent.[16] While recognizing _Davis_'s broad

---

[16] The district court in _Wu_ relied on pre-_Davis_ cases and its discussion of _Davis_ was limited to a parenthetical remark describing

language, Judge Oetken identified the "driving force behind Davis"
as "a concern that a 'non-consenting co-owner' would have her
'valuable and vested right to enforce her claim' destroyed by the
act of another." Young-Wolff, 2016 WL 154115, at *4 (quoting Davis,
505 F.3d at 103). Judge Oetken further found that the two policy
arguments Davis invoked in support of its holding – "the need for
predictability and certainty" and "discouragement of infringement" –
are not compelling in the sole-ownership context. Id. (quoting
Davis, 505 F.3d at 105). As for promoting predictability, "the
retroactive license adds little more complication than an ordinary
settlement." Id. As for discouraging infringement, Davis "was
concerned with the increased leverage an infringer would receive
when dealing with independent co-authors," which is not relevant to
the sole-ownership context. Id. In finding that the licenses at
issue operated retroactively as a factual matter, Judge Oetken
highlighted Davis's observation that "[a]n owner who wishes to
release unilaterally his own accrued claims may do so using whatever
language he chooses — including by calling the negotiated settlement
the proverbial 'banana.'" Id. at *6 (quoting Davis, 505 F.3d at

---

Davis as "holding that retroactive ratification by one co-owner
cannot vitiate other co-owner's infringement claim." Wu, 2013 WL
145666, at *4. The district court in Spinelli in turn relied heavily
on Wu in distinguishing Davis. See Spinelli, 96 F. Supp. 3d at 123–
24. The district court in Wells relied on Young-Wolff, Spinelli, and
Wu, and explained in a footnote that "[t]he facts and rationale
underlying [Davis] are distinguishable from this case, in which a
licensee grants a retroactive license pursuant to authority given to
it by the sole owner of a copyright." Wells, 2016 WL 889786, at *6
n.10.

104). The court concluded that "[i]f an agreement styled 'banana' can retroactively extinguish past claims, so can an agreement termed a 'license.'" Id.

As a threshold matter, this Court is not of the view that it has the discretion to narrow the scope of Davis's holding on the basis that Davis was animated by a set of considerations that are arguably not relevant here. That, of course, begs the question whether what Davis described as its holding – "that a license or assignment in copyright can only act prospectively" - was truly its holding in the precedential sense. See Davis, 505 F.3d at 104. While the metaphysical line between dictum and holding "is not always easy to draw," "'where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'" Cetacean Cmty. v. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004) (quoting United States v. Johnson, 256 F.3d 895, 914 (9th Cir. 2001) (Kozinski, J., concurring)). Such is the case here, where the principle established by the Second Circuit in Davis - and identified by that Court as its holding - is unambiguous and the result of full judicial consideration.

Moreover, the policy considerations allegedly motivating Davis do in fact apply to the sole-ownership context. As for "the need for predictability and certainty," many copyrights owners contract with a licensing agent to license their works, as plaintiff did with

Corbis here. Davis, 505 F.3d at 105. If a licensing agent may
license works retroactively, the sole copyright holder is not all
that differently situated – in terms of its ability to "reliably and
definitively determine if and when an infringement occurred" - than
a copyright co-owner whose infringement claim may be extinguished by
another co-owner's action. Id. The licensing agent is of course
acting as the copyright holder's agent, but the copyright holder is
still placed in the unenviable position of being generally unable to
know, with certainty, that its infringement claim will not be
extinguished by the grant of a retroactive license. See id. ("If
retroactive transfers and licenses were permissible, one could never
reliably and definitively determine if and when an infringement
occurred, because an infringement could be 'undone' by the very sort
of maneuver attempted by defendants in this case.").

    As for the desirability of discouraging infringement, it is
difficult to see how the availability of a retroactive license does
not "lower[] the cost of infringement to infringers" even in the
sole-ownership context, particularly given that the licensing fees
that have been contractually predetermined between the infringer and
the licensing agency will often be dwarfed by the statutory damages
that would have been available in an infringement action. Id. at
106; see 17 U.S.C. § 504(c) (providing for statutory damages of up
to $30,000 per work infringed in general, and up to $150,000 per
work infringed if the Court finds willful infringement). Thus, while
these two policy considerations might be more stark in the context

of copyright co-ownership, they are at play in the sole-ownership
context as well. See N. Jersey Media Grp. Inc., 2015 WL 1086566, at
*4 n.6 (finding that "the policy reasons underpinning the court's
holding in Davis are similarly present" where there is a sole
copyright holder).

The fact that "[a]n owner who wishes to release unilaterally
his own accrued claims may do so using whatever language he chooses
— including by calling the negotiated settlement the proverbial
'banana' — ", Davis, 505 F.3d at 104, is of no help to Rosen. In
obtaining the February 2008 License, Rosen plainly was not entering
into a "negotiated settlement" with Corbis. There was no recognition
by either Rosen or Corbis that infringement had occurred and, in
fact, Rosen denies that it infringed. Notwithstanding its reference
to the "proverbial 'banana,'" the Davis Court explicitly cautioned
against conflating settlements and retroactive licenses:

> Licenses and assignments function differently from
> settlements and releases, and the use of the term
> "retroactive license" for "settlement" or "release" by the
> parties causes unnecessary confusion and potentially
> creates legal mischief.
>
> . . .
>
> In its simplest form, a license means only leave to do a
> thing which the licensor would otherwise have a right to
> prevent. A retroactive license or assignment purports to
> authorize a past use that was originally unauthorized.
> Unlike a settlement, which recognizes an unauthorized use
> but waives a settling owner's accrued claims of liability,
> a retroactive license or assignment would — if given legal
> effect - erase []the unauthorized use from history . . . .

Id. at 102-03 (emphasis added) (citation and internal quotation marks omitted).

That parties may call a negotiated settlement whatever they wish does not mean that a retroactive license is, by definition, a negotiated settlement. This Court thus cannot bless an allegedly retroactive license by pretending that the license was in fact a negotiated settlement.

The Second Circuit might one day limit the scope of Davis in the manner Rosen seeks. But until such time, this Court cannot disregard Davis's categorical conclusion "that a license or assignment in copyright can only act prospectively." Id. at 104.

Furthermore, even if, contrary to this Court's conclusion, Davis could be read to permit retroactive licensing in the sole-ownership context, defendant's license for Image No. 2 did not operate retroactively as a factual matter. The February 2008 License had an explicit "License Start" date of February 20, 2008 and an explicit "License Expiration" date of February 20, 2015. See Kjellberg Decl. dated June 27, 2016, Ex. 5. None of the district court decisions that Rosen cites has held that all copyright licenses in the sole-ownership context must operate retroactively, but rather merely that they can operate retroactively and need not expressly speak to their retroactive effect. Here, Rosen's license for Image No. 2 was unequivocally non-retroactive on its face. As such, this case is readily distinguishable from Young-Wolff, in which the licenses made no "reference to prospective or retroactive

use," and the other cases relied on by Rosen. Young-Wolff, 2016 WL 154115, at *6; Wells, 2016 WL 889786, at *5-6 (finding that licenses which were dated could conceivably operate retroactively, but making no reference to license expiration dates); Spinelli, 96 F. Supp. 3d at 124 (upholding sublicense that "authoriz[ed] [defendants'] uses of a Plaintiff's photos occurring . . . before the issue date of the sublicense"); Wu, 2013 WL 145666, at *5 ("The invoices cited purchase a right to use particular works . . . in certain manners (i.e., certain numbers of copies or in certain media, subject to certain terms and conditions). . . . The Court declines to read additional, unstated limits into otherwise clear contracts.").

In light of the above, the Court finds that Rosen's unlicensed use of Image No. 2 (i.e., the July 2006 and January 2007 print runs) infringed plaintiff's copyright. For that reason, the Court awarded plaintiff summary judgment as to infringement on Image No. 2. What damages plaintiff is entitled to as a result of such infringement is an issue for trial.

Turning to Image No. 5 (titled "Teacher Calling on Student in Spanish Class"), Rosen licensed this image from Corbis under Invoice and License Agreement No. 586444 dated August 24, 2004 (the "August 2004 License"), for a distribution quantity of 10,000. See Kjellberg Decl. dated June 27, 2016, Ex. 10, ECF No. 59-10. The printer's invoices for the publication containing the Image ("Extreme Careers: Cryptologists") reflect a printing of 3,000 copies invoiced on March 14, 2003, and a printing of 2,000 copies invoiced on September 16,

2005, for a total of 5,000 copies. See Def.'s Local Rule 56.1 Stmt. ¶ 31.

With respect to the March 2003 print run, defendant's pre-license use was infringing for the same reasons the Court found defendant's pre-license use of Image No. 2 to be infringing.

With respect to the September 2005 print run, plaintiff contends that this print run was infringing because it occurred after Rosen's license for Image No. 5 expired. In particular, plaintiff contends that, pursuant to the 2003 PPA, the August 2004 License was subject to a one-year default term. The EULA incorporated into the 2003 PPA provides that:

> Except as specified in the Corbis invoice, Images obtained from Corbis are licensed on a non-transferable, onetime, non-exclusive basis, and are strictly limited to the use, medium, time period, print run, placement, size of Image, territory, and any other restrictions indicated in the invoice or contained on Corbis' online site, and are licensed for use within one year from the date of the invoice, or sixty (60) days for internal evaluations ("comps").

2003 PPA at 6 (emphasis added).

As such, under the terms of Rosen's governing agreement with Corbis, the August 2004 License expired on August 24, 2005, before defendant's September 2005 print run. "It is black-letter law that a claim for copyright infringement lies when a party's use of copyrighted material exceeds the scope of its license," as plaintiff contends Rosen's September 2005 print run did here. John Wiley & Sons, Inc. v. DRK Photo, 998 F. Supp. 2d 262, 287 (S.D.N.Y. 2014) (internal quotation marks omitted).

30

Relying on extrinsic evidence, Rosen counters that the one-year default license term set forth in the 2003 PPA was mere boilerplate not specifically tailored to book publishing and should be reformed by the Court. According to Rosen, neither it nor Corbis considered Rosen bound by the unambiguous term. Indeed, Steve Spelman, who was involved in negotiating PPAs on behalf of Corbis, avers that "[s]uch language was never interpreted or enforced by Corbis as imposing a one-year license expiration on numerous book publisher licensees such as Rosen, and is inconsistent with Corbis's course of dealing with such book publisher licensees during my time at Corbis." Decl. of Steve Spelman in Further Support of Def.'s Mot. for Partial Summ. J. ("Spelman Decl. dated July 18, 2016"), ¶ 2, ECF No. 77. Defendant's president, Roger Rosen, concurs. See Rosen Decl. dated July 18, 2016, ¶ 5 ("I understand that Palmer Kane claims that Corbis licenses had a one-year expiration unless the invoice indicated otherwise. This was never my understanding, was inconsistent with Rosen's course of dealing with Corbis, and would have been entirely inconsistent with the realities of the children's library book publishing industry.").

Rosen's reformation argument nonetheless fails on both substantive and procedural grounds.

First, "[r]eformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error." Amend v. Hurley, 59 N.E.2d 416, 419 (N.Y. 1944). In addition, "[t]he proponent of reformation must show in no

uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." Chimart Assocs. v. Paul, 489 N.E.2d 231, 234 (N.Y. 1986) (internal quotation marks omitted). Here, defendant has failed to even make a prima facie showing of "what was really agreed upon between the parties." Id. In particular, Steve Spelman's description of the parties' agreement materially differs from Roger Rosen's. In his June 25, 2016 Declaration, the former Corbis officer avers that "Corbis and, I believe, its book publisher customers understood that the expiration date of a license was the date on which the publisher's right to print copies (within the numerical limit) expired. The publisher's right to sell and distribute those copies does not expire." Spelman Decl. dated June 25, 2016, ¶ 8 (emphasis added). Roger Rosen, meanwhile, avers that it was never his understanding that the Corbis licenses were subject to a one-year term, as "[n]o publisher like Rosen could function under a framework in which it was routinely expected to do all of its printing of a given title in just one year." Rosen Decl. dated July 18, 2016, ¶ 6. In other words, Spelman and Rosen appear to disagree as to whether printing of copies after the date on which a given license expires is permitted. While Spelman appears to contemplate some expiration date for printing (even if not necessarily a one-year one), Rosen appears to contemplate none. Moreover, Spelman does not claim to have participated in the negotiations of the 2003 PPA and he was not a signatory to that agreement. Under such circumstances, Rosen, as a

32

matter of law, cannot meet its heavy burden of showing "exactly what was really agreed upon between the parties." Chimart Assocs., 489 N.E.2d at 234.

Second, even if Rosen had raised a triable issue of fact as to the substantive element of its reformation claim, its argument is untimely. In federal court, a request for reformation, which depends on allegations of mutual mistake, is required to be pleaded in accordance with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. See Core-Mark Int'l Corp. v. Commonwealth Ins. Co., 2006 WL 2501884, at *8 (S.D.N.Y. Aug. 30, 2006) (granting defendant summary judgment on plaintiff's request for reformation at the summary judgment stage because plaintiff "fail[ed] to plead mutual mistake at all, let alone with the particularity required by Rule 9(b)"); Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp., 2015 WL 3999192, at *10 (S.D.N.Y. June 29, 2015) ("[B]ecause [plaintiff] alleges that the contract should be reformed based on the mistake of one or both parties, the Amended Complaint must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)."); Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC, 724 F. Supp. 2d 407, 417 (S.D.N.Y. 2010) ("[A]llegations [of mutual mistake] must satisfy the particularity requirements of Rule 9(b)."). Like the plaintiff in Core-Mark,

defendant failed to plead its allegations of mutual mistake at all and its reformation argument should be disregarded on that basis.[17]

Because Rosen's September 2005 print run occurred after its license for Image No. 5 had expired, such use (along with Rosen's pre-license use of Image No. 5) infringed plaintiff's copyright. The Court thus awarded plaintiff summary judgment on Image No. 5 as to infringement. As with Image No. 2, what damages plaintiff is entitled to as a result of defendant's unlicensed infringement is an issue for trial.[18]

Finally, the Court turns to the last remaining Image at issue: Image No. 6. Defendant contends that, pursuant to Invoice IY00307604, Alamy Limited, another of plaintiff's licensing agents, licensed this Image to Rosen's consignor, Wayland, which is a

---

[17] Although plaintiff did not raise this argument, "[a] district court may consider whether a complaint," or an argument, as it were, "complies with Rule 9(b) sua sponte." DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 658 (S.D.N.Y. 2011).

[18] Rosen also argues that plaintiff's allegation that Image No. 5 (among other Images) is validly registered under the '358 Registration cannot be verified as a result of the poor quality of the deposit material submitted for that Registration. According to plaintiff, Image No. 5 was mistakenly attributed in its Amended Complaint to the '358 Registration and is in fact registered under the '724 Registration – the deposit material for which is clear and in color. See Shuman Decl. dated July 11, 2016, Ex. 4, ECF No. 62-4. In any event, Rosen's argument fails on the merits. Each Image plaintiff sues on is associated with a unique alphanumeric identifier in its deposit materials. See id. These unique alphanumeric identifiers are also reflected in the licenses issued by Corbis to Rosen. See Kjellberg Decl. dated June 27, 2016, Exs. 10, 18, 30, 46; see also Shuman Decl. dated June 27, 2016, Exs. 15, 23. As a result, it is clear that each of the asserted Images is the same image registered with the Copyright Office.

division of Hachette Children's Books, Hodder & Stoughton Ltd. See
Def.'s Local Rule 56.1 Stmt. ¶¶ 32-33.[19] Plaintiff admits that
Rosen's subsequent use of Image No. 6 in its publication "Improving
Flexibility" was in conformance with Invoice IY00307604, see id.
¶ 35, and that Rosen requested and was granted a license to use the
Image, see id. ¶ 10. Yet, plaintiff argues that because the Alamy
Rights Managed End User License Agreement provides that any license
granted by Alamy is "nonsublicensable," Wayland could not sublicense
any rights to Rosen. See Shuman Decl. dated July 11, 2016, Ex. 8 at
1, ECF No. 62-8. In fact, however, Rosen was not a sublicensee of
Wayland, but rather the U.S. distributor of the American editions of
books created by Wayland, pursuant to a 2006 consignment agreement
between those parties. See Kjellberg Decl. dated June 27, 2016, Ex.
15, ECF No. 59-15. As defendant's expert explains in a statement
that goes unrebutted, "[a] consignment agreement is not a license
agreement or a sublicense agreement." Ross Decl. dated July 7, 2016,
Ex. 1 at 8. Moreover, plaintiff points to no evidence that Wayland
was a party to the Alamy Rights Managed End User License Agreement
that it premises its argument on. See Heublein, Inc., 996 F.2d at
1461 ("Genuine issues of fact are not created by conclusory

---

[19] Plaintiff denies in its Rule 56.1 counterstatement that Image No.
6 was licensed by Alamy Limited to Wayland, as the relevant invoice
does not mention Wayland, but rather appears to be a license
obtained by "Hachette Children's" on its face. Kjellberg Decl. dated
June 27, 2016, Ex. 14., ECF No. 59-14. Plaintiff's only argument in
opposition to summary judgment is meritless, so the dispute is
immaterial.

allegations."). In view of the above, defendant is entitled to summary judgment that its use of Image No. 6 was not infringing.

In sum, for the foregoing reasons, the Court granted summary judgment to defendant on plaintiff's claims based on defendant's use of Image Nos. 1, 6, 8, 10, 12, 13, 15, 16, and 18, and granted summary judgment to plaintiff as to infringement on its claims based on defendant's use of Image Nos. 2 and 5. Because it now appears that the date of the trial, previously scheduled to begin September 12, must be modestly adjusted, the parties are directed to jointly telephone the Court by no later than September 2, 2016 to adjust the trial date.

SO ORDERED.

Dated:    New York, NY
          August 30, 2016

_____
JED S. RAKOFF, U.S.D.J.